UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-23838-Civ-COOKE/TORRES

MARIPOSA ASSOCIATES, LTD.,
a Florida limited partnership,

    Plaintiff,

vs.

REGIONS BANK, an Alabama banking
corporation,

    Defendant.

_____/

### OMNIBUS ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER is before me upon Defendant Regions Bank's ("Defendant" or "Regions") Motion for Final Summary Judgment on Interpretation of Loan Documents (ECF No. 33), Defendant Regions' Motion for Final Summary Judgment on Res Judicata and Collateral Estoppel (ECF No. 38), and Plaintiff Mariposa Associates, Ltd.'s ("Plaintiff" or "Mariposa") Cross-Motion for Summary Judgment on Res Judicata and Collateral Estoppel (ECF No. 47). The motions for summary judgment have been fully briefed and are ripe for adjudication.

I have reviewed the motions for summary judgment and accompanying attachments, the parties' statements of material undisputed facts, the responses and replies thereto, the record, and the relevant legal authorities. For the reasons provided herein, Defendant Regions' Motion for Final Summary Judgment on Interpretation of Loan Documents is GRANTED; Defendant Regions' Motion for

Final Summary Judgment on Res Judicata and Collateral Estoppel is DENIED; and Mariposa's Cross-Motion for Summary Judgment on Res Judicata and Collateral Estoppel is GRANTED.

## I. BACKGROUND

Mariposa brought this one count Complaint to recover on an alleged breach of contract by Regions. *See generally* Compl., ECF No. 1. Mariposa was a borrower on a loan agreement that was secured by property in St. Lucie County, Florida. Mariposa contends that a separate property in Miami-Dade also collateralized the loan. According to Mariposa, the proceeds from the sale of the Miami-Dade County property was supposed to be used to pay down its loan. Mariposa contends that Regions breached the agreement when it assigned the loan to an investor without including that provision in the assignment. Mariposa claims that, but for that breach, it would not have had to pay a settlement, or expend attorneys' fees, in a foreclosure action brought by the investor against Mariposa.

The following material facts are undisputed, unless otherwise noted. On June 27, 2005, Plaintiff entered into a $2,800,000 commercial loan agreement with Defendant[1] (the "St. Lucie Loan"), as evidenced by several loan documents. The parties executed a loan agreement (the "St. Lucie Loan Agreement"), a Promissory Note (the "St. Lucie Note"), and a Mortgage, Assignment of Rents and Security Agreement (the "St. Lucie Mortgage"), which granted a first mortgage lien on a 9.88 acre parcel of real property located in St. Lucie County, Florida (the "St. Lucie

---

[1] Defendant Regions is the successor by merger to AmSouth Bank. The original agreements were entered into by AmSouth Bank prior to the merger of the two entities. I will refer to AmSouth Bank and Regions herein as "Regions" or "Defendant."

2

Property"). Mariposa's principals guaranteed the loan.

The St. Lucie Note included the following term:

> Maker and all sureties, endorsers, guarantors and any other party now or hereafter liable for the payment of this Note in whole or in part, hereby severally (i) waive demand … and all other notices (except any notices which are specifically required by this Note and any other Loan Document) … (ii) agree to any substitution, subordination, exchange or release of any such security or the release of any party primarily or secondarily liable hereon; (iii) agree that the holder hereof shall not be required first to institute suit … or to perfect or enforce its rights against them or any security herefor … without notice thereof or further consent of Maker or any guarantors to any of them.

*See* Promissory Note, Compl. Comp. Ex. B (ECF No. 1 at p. 67). The St. Lucie Loan Agreement provided that, "no provision of this Agreement shall be amended, waived, modified, discharged or terminated, except by instrument in writing signed by the parties hereto." (ECF No. 1 at p. 36).

Shortly after making the St. Lucie Loan, Defendant loaned approximately $10,000,000 ("Miami-Dade Loan") to purchase land in Miami-Dade County, Florida (the "Miami-Dade Property"), to two companies that were associated with and controlled by Mariposa's principals (the "Miami-Dade Borrowers"). A first mortgage over the Miami-Dade Property secured that loan.

The parties amended their loan agreement numerous times in order to extend the maturity date. Each time, the terms and conditions of the original loan agreement were incorporated by reference. *See, e.g.,* Mortgage and Loan Agreement Modification Agreement, Compl., Comp. Ex. A (ECF No. 1 at p. 41). And each time, the guarantors reaffirmed their guaranty agreement.

During one round of amendments in July 2007, Plaintiff executed a Second Agreement and Mortgage and Loan Agreement Modification Agreement (the

3

"Spreader Agreement"). *See* Spreader Agreement, Compl., Comp. Ex. A (ECF No. 1 at p. 43). Mariposa and the Miami-Dade Borrowers executed the Spreader Agreement. *Id.* at 46 – 47. Pursuant to the Spreader Agreement, the St. Lucie Loan became secured by both a first mortgage on the St. Lucie Property and a second mortgage on the Miami-Dade Property. Similar agreements were executed as the maturity date on the loan agreement was extended. *See* Second Mortgage and Loan Agreement Modification Agreement, Compl., Comp. Ex. A (ECF No. 1 at p. 52); Third Mortgage Modification Agreement (ECF No. 1 at p. 170).

On June 26, 2008, Mariposa executed an Amendment to Loan Agreement (the "2008 Amendment to Loan Agreement"). *See* 2008 Amendment to Loan Agreement, Compl., Comp. Ex. A (ECF No. 1 at p. 61). The 2008 Amendment to Loan Agreement provided:

> In the event of the sale of a portion of the Premises (consisting of an 8 acre outparcel), Borrower shall pay Lender the net proceeds from such sale, which shall be applied: (i) to reduce the outstanding principal balance of the Loan; (ii) to replenish the interest reserve account in connection with: (a) the Loan and (b) that certain loan by Lender to Cornerstone CW, L.L.C. and Cornerstone CW Commercial, L.L.C. as evidenced by that certain Amended and Restated Promissory Note dated effective June 27, 2008 in the original principal amount of $10,850,000.00 ("Emerald Point Loan"); (iii) to pay 2007 ad valorem real estate taxes as described in subparagraph (f) hereof; **and/or** (iv) to pay 2008 ad valorem real estate taxes in connection with the Premises and the property that is security for the Emerald Point Loan (the "Emerald Point Property").

*Id.* at p. 62 (emphasis added). The 2008 Amendment to Loan Agreement provided that it was subject to the terms and conditions of the June 2005 Loan Agreement. *Id.* at 63. The 2008 Amendment to Loan Agreement was executed by Mariposa and Regions, but not the Miami-Dade Borrowers. *Id.* at 64 – 65.

4

On September 29, 2008, Defendant entered into a Sale and Assignment Agreement with Florida Loan Holding Partners, LLC (the "Note Purchaser").  *See* Sale and Assignment Agreement, Compl., Ex. F (ECF No. 1 at p. 235).  Specifically excepted from the assignment was the mortgage lien on the Miami-Dade Property.  The Sale and Assignment Agreement contained an indemnity provision, which was limited by the following language:

> 14.   **Limitation of Liability and Remedies.**
> (a)   Should Seller for any reason ever become liable to Buyer under any circumstances arising under or resulting from this Agreement, for any claim, loss, cost, damage, judgment, expense or other liability of any kind, including reasonable attorneys' fees (collectively, the "Liability"), then Buyer's recourse against Seller for such Liability shall be limited to the least of…In no event shall Seller have any responsibility for any Liability occurring or reported in writing to Seller more than sixty (60) days after the Closing Date.

*Id.* at 244.

Defendant and the Note Purchaser also entered into an Agreement Regarding Cross Collateralization, which made clear that the Note Purchaser released any claim or lien it may have against the Miami-Dade Property.  *See* Agreement Regarding Cross Collateralization, Compl., Ex. G (ECF No. 1 at p. 265).  Mariposa did not sign or consent to the Sale and Assignment Agreement or the Agreement Regarding Cross Collateralization.

In January 2009, the Note Purchaser filed a foreclosure action against Mariposa and the Guarantors (the "St. Lucie Action").  Mariposa and the Guarantors named Regions as a third party defendant.  In the St. Lucie Action, Mariposa and the Guarantors claimed that Regions committed a breach of contract by releasing the lien over the Miami-Dade Property that had secured the St. Lucie

5

Loan. During the four-year proceedings, all claims against Regions were dismissed without prejudice, and Mariposa never re-filed its claims against Regions.[2]

On August 27, 2009, the Miami-Dade Property was sold, including the Miami-Dade Outparcel. The proceeds attributable to the Miami-Dade Outparcel would have been sufficient to pay the St. Lucie Loan in full on August 27, 2009.

On April 26, 2013, a Final Judgment was entered in the St. Lucie Action finding that the Note Purchaser prevailed and that Mariposa failed to prove all of its defenses and counterclaims. Regions was not a party to the St. Lucie Action when the court entered its final judgment.

Mariposa claims that Regions' breach of contract caused it to incur damages in the form of a settlement it paid, and the attorneys' fees it incurred during the St. Lucie Action. Specifically, Mariposa claims that Regions' release of its liens over the Miami-Dade Property pursuant to the 2008 Amendment to Loan Agreement caused its damages because the 2008 Amendment to Loan Agreement provided Regions with a first priority lien over proceeds of the sale of a portion of the Miami-Dade Property, and those proceeds would have been sufficient to pay off the St. Lucie Loan on August 27, 2009 when the Miami-Dade Property was sold.

## II.    LEGAL STANDARDS

Summary judgment "shall be granted if the pleadings, depositions, answers

---

[2] Regions asserts that claims against it were dismissed *with prejudice* on August 24, 2010. *See* Def.'s Statement of Material Facts in Opposition to Pl.'s Cross-Motion for Partial Summary Judgment (ECF No. 58) at ¶ 48. The transcript of the hearing, however, indicates that the court permitted Mariposa leave to re-file its claims against Regions in a cross-claim. (ECF No. 58-3 at p. 105). Regions has not submitted any evidence of an order dismissing it from the St. Lucie Action with prejudice.

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Thus, the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon*, 196 F.3d at 1358. When

deciding whether summary judgment is appropriate, "the evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston County Commission*, 414 F. App'x 264, 266 (11th Cir. 2011).

### III. DISCUSSION

**A. Motions for Summary Judgment on Res Judicata and Collateral Estoppel**

Regions moves for final summary judgment on res judicata and collateral estoppel grounds. Regions argues that the claims and issues raised in Mariposa's Complaint were fully litigated in the St. Lucie Action. Mariposa argues that its claims are not barred by either res judicata or collateral estoppel because Regions was not a party to the St. Lucie Action at the time of the judgment and is not bound by the judgment. Mariposa cross motions for summary judgment on the issues of res judicata and collateral estoppel. Because I agree that res judicata and collateral estoppel do not bar Mariposa's claims, I am denying Regions' motion for summary judgment on res judicata and collateral estoppel, and granting Mariposa's cross motion for summary judgment on res judicata and collateral estoppel.

Collateral estoppel and res judicata are judicial doctrines that generally prevent the same parties from relitigating the same issues already decided in a previous action. *See Topps v. State*, 865 So. 2d 1253, 1254-55 (Fla. 2004).[3] Defensive use of the doctrine of collateral estoppel still requires mutuality of parties. *See E.C. v. Katz*, 731 So. 2d 1268 (Fla. 1999). "In order for res judicata or collateral

---

[3] This Court applies Florida law to determine whether the doctrines of res judicata or collateral estoppel apply with respect to this diversity case. *See Clecker v. Republic Van & Storage Co., Inc.*, 556 F. 2d 766, 768 (5th Cir. 1977).

estoppel…to apply, Florida requires 'mutuality' and 'identity of parties.'" *Massey v. David*, 831 So. 2d 226, 232 (Fla. 1st DCA 2002); *see also Stogniew v. McQueen*, 656 So. 2d 917, 919-20 (Fla. 1995). "Identity of parties and mutuality do not exist unless the same parties or their privies participated in prior litigation that eventuated in a judgment by which they are mutually bound." *Id.* For res judicata and collateral estoppel purposes, a party is in privity with a party to a lawsuit where he or she "is bound by the final judgment entered to the same extent as the named parties." *Id.*

Regions was not a party to the St. Lucie Action when the court there entered its final judgment. Regions, however, argues that it was in privity with the Note Purchaser because it was the Note Purchaser's assignor and because Regions and the Note Purchaser were subject to mutual indemnification provisions. I disagree.

While Regions assigned most of its rights and obligations to the Note Purchaser, it specifically excluded from the assignment any claim or lien Regions may have had against the Miami-Dade Property. The crux of Mariposa's claim is that this specific exclusion constituted a breach of the agreement between Mariposa and Regions. Under these circumstances, I find that Regions was not "bound by the final judgment entered to the same extent" as the Note Purchaser, and was therefore not the Note Purchaser's privy for res judicata and collateral estoppel purposes.

Regions cites to a number of cases in support of its argument that, as assignor, it was in privity with the Note Purchaser. None of the cases address the key distinguishing fact presented by this case – that the assignment excluded the very rights and obligations central to the subsequent action. In *Rhyne v. Miami-Dade Water and Sewer Authority*, 402 So. 2d 54 (Fla. 3d DCA 1981), for example, the defendant

9

successfully invoked the defense of res judicata because he was the assignee of a final judgment in a prior action. Therefore, the defendant in *Rhyne* was "entitled to *all* the beneficial interests, rights and remedies of the assignor." *Id.* at 55 (emphasis added). Similarly, in *Marulanda v. Marrero*, 162 B.R. 20, 23 n.1, n.5 (Bankr. S.D. Fla. 1993), the court noted that one Pablo Marulanda was in privity with the appellants because "Appellants had assigned *all* of their rights and interests in the 1984 GMB stock transaction to Pablo Marulanda…." (emphasis added). Here, the rights and obligations that Regions had prior to the assignment are not the same rights and obligations that the Note Purchaser had after the assignment, and this case centers around those rights and obligations not shared between Regions and the Note Purchaser.

Regions' argument that it is in privity with the Note Purchaser for res judicata and collateral estoppel purposes by virtue of mutual indemnification provisions is likewise unavailing. Generally, "[v]irtual representation or privity may exist where a third party must indemnify and so is vicariously liable for the acts of the party to the lawsuit." *See Massey v. David*, 831 So. 2d 226, 233 (Fla. 1st DCA 2002). Regions' indemnification of the Note Purchaser, however, provided that, "In no event shall Seller have any responsibility for any Liability occurring or reported in writing to Seller more than sixty (60) days after the Closing Date." *See* Sale and Assignment Agreement, Compl., Ex. F (ECF No. 1 at p. 244). As of the time of the St. Lucie Action final judgment, Regions had long ago been released of any indemnification obligation. Thus, Regions was not, at that time, bound by the final judgment, and may not avail itself of the doctrines of res judicata or collateral estoppel.

> **B.   Defendant's Motion for Final Summary Judgment on Interpretation of Loan Documents**

Regions has also moved for summary judgment on the grounds that various terms of the loan documents demonstrate that Mariposa is not entitled to relief as a matter of law.  Below, I will discuss the governing law on the breach of contract claim, the various grounds for summary judgment asserted by Regions, and Mariposa's arguments in opposition to summary judgment.

> *1.   Governing Law on Breach of Contract Claims*

The parties apply Florida law to this breach of contract action, apparently on the basis of the choice of law clause in the St. Lucie Loan.  To prevail on a breach of contract claim, a party must prove (1) the existence of a valid contract; (2) a material breach; and (3) damages.  *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008).  "It is well settled that the actual language used in the contract is the best evidence of the intent of the parties and, thus, the plain meaning of that language controls."  *Rose v. M/V "GULF STREAM FALCON"*, 186 F.3d 1345, 1350 (11th Cir. 1999).  Only when the terms of a contract are ambiguous or susceptible to different interpretations is parol evidence admissible to "explain, clarify or elucidate" the ambiguous term.  *Friedman v. Va. Metal Prods. Corp.*, 56 So. 2d 515, 517 (Fla. 1952); *McInerney v. Klovstad*, 935 So. 2d 529, 531-32 (Fla. 5th DCA 2006).  The initial determination of whether a contract term is ambiguous is a question of law.  *Strama v. Union Fidelity Life Ins. Co.*, 793 So. 2d 1129, 1132 (Fla. 1st DCA 2001); *Arriaga v. Fla. Pac. Farms, Inc.*, 305 F.3d 1228, 1246-47 (11th Cir. 2002).

> *2.   Whether Regions Was Required to Pursue the Miami-Dade Property Collateral Prior to Enforcing the St. Lucie Note*

11

Regions argues that its release of any lien it had over the Miami-Dade Property cannot be the basis for a breach of contract claim because the St. Lucie Note did not obligate Regions to pursue the Miami-Dade Property before enforcing the St. Lucie Note.  I agree.

The St. Lucie Note provided:

> Maker and all sureties, endorsers, guarantors and any other party now or hereafter liable for the payment of this Note in whole or in part, hereby severally (i) waive demand … and all other notices (except any notices which are specifically required by this Note and any other Loan Document) … (ii) **agree to any substitution, subordination, exchange or release of any such security or the release of any party primarily or secondarily liable hereon;** (iii) **agree that the holder hereof shall not be required first to institute suit … or to perfect or enforce its rights against them or any security herefor … without notice thereof or further consent of Maker or any guarantors to any of them.**

(ECF No. 1 at p. 67) (emphasis added).[4]  By the plain meaning of this provision, Mariposa agreed to the "release of any such security," and agreed that Regions "shall not be required" to "perfect or enforce its rights against them or any security herefor…without notice thereof or further consent of Maker."  Accordingly, Regions had the option, but not the obligation, to seek any available security for the St. Lucie Note.  Since Regions was never obligated to pursue any particular form of security, it cannot be that its release of the Miami-Dade Property constituted a breach of the agreement between the parties that resulted in damages to Mariposa.

> 3. *Whether the 2008 Amendment to Loan Agreement Required Regions to Apply Sale Proceeds From A Sale of a Portion of the Miami-Dade Property Towards the Repayment of the St. Lucie Loan*

Regions further argues that its release of any lien it had over the Miami-Dade

---

[4] This language was reaffirmed with every amendment to the parties' agreement.

12

Property cannot be the basis for a breach of contract claim because the 2008 Amendment to Loan Agreement did not obligate Regions to first apply the proceeds of a sale of a portion of the Miami-Dade Property towards the repayment of the St. Lucie Note. I agree.

> The 2008 Amendment to Loan Agreement provided in pertinent part:
>
> **In the event of the sale of a portion of the Premises (consisting of an 8 acre outparcel), Borrower shall pay Lender the net proceeds from such sale, which shall be applied: (i)** to reduce the outstanding principal balance of the Loan; **(ii)** to replenish the interest reserve account in connection with: (a) the Loan and (b) that certain loan by Lender to Cornerstone CW, L.L.C. and Cornerstone CW Commercial, L.L.C. as evidenced by that certain Amended and Restated Promissory Note dated effective June 27, 2008 in the original principal amount of $10,850,000.00 ("Emerald Point Loan"); **(iii)** to pay 2007 ad valorem real estate taxes as described in subparagraph (f) hereof; **and/or (iv)** to pay 2008 ad valorem real estate taxes in connection with the Premises and the property that is security for the Emerald Point Loan (the "Emerald Point Property").

(ECF No. 1 at p. 62) (emphasis added). The plain meaning of this provision, which uses the term "and/or", is that Regions (the "Lender") could apply the net proceeds from the sale in any one of four ways. Nothing about this provision obligated Regions to choose to apply the proceeds in the first manner, i.e., "to reduce the outstanding principal balance of the Loan." Mariposa does not argue that "and/or" is an ambiguous term.

Mariposa attempts to avoid summary judgment on this ground with evidence of the parties' intent when entering into the 2008 Amendment to Loan Agreement. This Court, however, can only consider the parties' intent if there is an ambiguity in the agreement that needs to be resolved. *Friedman*, 56 So. 2d at 517; *McInerney*, 935 So. 2d at 531-32. Mariposa argues that the term "Premises (consisting of an 8 acre

13

outparcel)" is ambiguous. While that may be true, that ambiguity is not determinative of the motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.") (emphasis in original). Even accepting Mariposa's assertion that "Premises" refers to an outparcel of the Miami-Dade Property, that interpretation does not overcome the fact that the remainder of that provision only provides that the proceeds of the sale of the Premises be used in *any* of four ways, not *just* (*and not first*) to reduce the outstanding principal balance of the Loan.

Mariposa also asks this Court to consider, in interpreting the meaning of the 2008 Amendment to Loan Agreement, a separate amendment executed on June 27, 2008 by the Miami-Dade Borrower pertaining to its loan with Regions (the "Miami-Dade Amendment to Loan Agreement"). While Mariposa admits that the Miami-Dade Amendment to Loan Agreement provides that the Miami-Dade Property outparcel's proceeds go to pay the Miami-Dade Borrowers' loan, it argues that was a scrivener's error and the actual intent of the Miami-Dade Amendment to Loan Agreement was to have the Miami-Dade Borrowers consent to having its Miami-Dade Property outparcel's proceeds go first to pay off the St. Lucie Loan. I cannot, however, consider this separate agreement relating to a separate loan in interpreting the unambiguous, and determinative term "and/or" contained in the 2008 Amendment to Loan Agreement. *Friedman*, 56 So. 2d at 517; *McInerney*, 935 So. 2d at 531-32.

14

### 4. Whether the 2008 Amendment to Loan Agreement Was Enforceable Given That the Miami-Dade Borrower Did Not Sign It

Regions further argues that its release of any lien it had over the Miami-Dade Property cannot be the basis for a breach of contract claim because the 2008 Amendment to Loan Agreement was not an enforceable mortgage given that the Miami-Dade Borrower never executed it. I agree.

A mortgage must be signed by the mortgagor in order to be valid. *Teate v. Anderson*, 164 So. 849 (Fla. 1935); *see also* 37 Fla. Jur. 2d Mortgages, Etc. § 53. Mariposa's claim relies on the premise that the 2008 Amendment to Loan Agreement created a first position mortgage on a portion of the Miami-Dade Property.[5] But, assuming Mariposa's argument to be correct, the 2008 Amendment to Loan Agreement would be an invalid mortgage because it was not signed by the mortgagor, the Miami-Dade Borrowers.

### 5. Mariposa's Contentions That It Was Fraudulently Induced

In opposition to the motion for summary judgment, Mariposa argues that in June 2007 Regions promised Mariposa, the Miami-Dade Borrowers, and the Guarantors that, "if they agreed to cross-collateralize the Mariposa Loan and the Miami-Dade Loan, Regions would pursue the collateral (*i.e.*, foreclose on the Miami-Dade Property and the St. Lucie Property) before pursuing the borrowers and the Guarantors for the amounts owed." (ECF No. 36 at p. 5). Mariposa argues that, "Mariposa, the Miami-Dade Borrower, and the Guarantors signed the Loan

---

[5] "Whenever property belonging to one person is held by another as security for an indebtedness of the other, the transaction is in effect a mortgage." *Kirkland v. Miller*, 702 So. 2d 620, 621 (Fla. 4th DCA 1997) (quoting *Williams v. Roundtree*, 478 So. 2d 1171 (Fla. 1st DCA 1985)); *see also* Fla. Stat. § 697.01.

15

Documents, including those allowing release of collateral, in reliance on this representation." (*Id.* at 17.) Mariposa supports its argument with the affidavit of Leon J. Wolfe, a principal of a member of Mariposa.

Mariposa cannot avoid summary judgment on the basis that it was fraudulently induced into entering into the Spreader Agreement or any other agreement. First, Mariposa did not bring a claim for fraudulent inducement, only a claim for breach of contract. It cannot amend its complaint in an opposition to a motion for summary judgment. *See Menzie v. Ann Taylor Retail Inc.*, 549 Fed. App'x. 891, 896 (11th Cir. 2013). Second, despite Mariposa's contention, its fraudulent inducement arguments are not being asserted "to avoid Regions' affirmative defenses." (ECF No. 36 at p. 16, n.5.) Regions has not moved for summary judgment on any of its affirmative defenses. Finally, because there are no ambiguities in the material provisions of the parties' agreement, I cannot resort to parol evidence to change or add to the terms of the parties' agreement. *Friedman*, 56 So. 2d at 517; *McInerney*, 935 So. 2d at 531-32.

      **6.**      ***Whether Summary Judgment is Premature***

Mariposa argues that summary judgment is premature because discovery had not been completed when Regions filed its motion. I disagree. Regions' motion for summary judgment is based on the contention that the material terms of the loan agreement are unambiguous and that they demonstrate that Regions is entitled to judgment as a matter of law. Because I find that there are unambiguous terms of the loan agreements providing several grounds for granting Regions' motion for summary judgment, no additional discovery is required.

16

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that:

1. Defendant Regions Bank's Motion for Final Summary Judgment on Interpretation of Loan Documents (ECF No. 33) is **GRANTED**.

2. Defendant Regions Bank's Motion for Final Summary Judgment on Res Judicata and Collateral Estoppel (ECF No. 38) is **DENIED**.

3. Plaintiff Mariposa Associates, Ltd.'s Cross-Motion for Summary Judgment on Res Judicata and Collateral Estoppel (ECF No. 47) is **GRANTED**.

4. The Clerk is directed to **CLOSE** this case.

5. All pending motions are **DENIED as moot**.

**DONE and ORDERED** in chambers, at Miami, Florida, this 31st day of March 2015.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
Edwin G. Torres, U.S. Magistrate Judge
Counsel of Record